Our seventh case for this morning is Hussain v. Federal Express. Mr. Burtnett. Good morning. Justin Burtnett for the plaintiff in this matter. May it please the court. This case is based upon a two-count complaint at the district court level based upon gender and for two certain specific positions that my client was not promoted to, which was an interim senior manager position and then the permanent hiring for the same senior manager position. Our overarching argument is that at the district court level the court failed to consider the facts and the light most favorable to the non-moving party. In other words, my client should be Hussain. We pointed to specific examples in the brief where we believe that the district court failed to look at facts and the light most favorable to Ms. Hussain. Two specific examples that really stick out would be with respect to two current Federal Express employees who were represented in their depositions by Federal Express Countell. That would be Gayle Mazik and Sheila Thompson. Gayle Mazik specifically testified regarding the decision maker and his treatment of women, that he treated them aggressively. They were characterized as aggressive and negative compared to male counterparts, that females were treated differently in meetings. However, the district court called her testimony vague and conclusive. With respect to Sheila Thompson, she filed an internal complaint against the decision maker. She stated that the decision maker had called her passive aggressive at least five times and that he had made negative comments about her non-verbal communications and facial expressions, which is nearly identical to what he did to my client in this matter as well. Despite all of this, the district court did eventually find that Truesdale's track record of not promoting females operations managers to senior manager positions, as well as EEO complaints that was made by Sheila Thompson, did find, quote, some evidence he harbored discriminatory attitudes against women, but it was still, the complaint was still dismissed in its entirety. So your opponents rely heavily on this interview panel and the scores that they Sure, I think that cuts two different ways, Your Honor. The first way is the interview panel was not the decision maker in this matter, because what it comes down to is Michael Phillips was the top scoring candidate. George Truesdale, the true decision maker in this matter, decided that he was not going to hire Mr. Phillips because he didn't think he was qualified for the position based upon a discussion with his manager and did not think he was ready for a position at a major station. He then picked John Griffith, who scored second. Then the issue comes to, at that point, the panel becomes a suggestion, not the decision maker. So the panel scoring to some extent is a red herring. That being said, beyond that, I think we have shown that the panel, it's also questionable about their scoring, because what it comes down to is Truesdale, he basically controlled this entire process with respect to the panel. What he did is he initially went and chose who was going to be on the panel, including Mr. Griffith's direct supervisor, and actually did it in a way that FedEx changed their entire corporate policy based upon who he put on this panel. Then he picked all of the interview questions, including one where it was asking the question, if you were in this role, what would you do in 30, 60, and 90 days? While Griffith was in the position for almost 30 days. Talk about giving someone an absolute leg up. Next, he then chose who to interview. Under some of the matrix that were shown by FedEx, Griffith wouldn't have even been, I'm sorry, Griffith not even been allowed to testify, I'm sorry, to interview for this process. Truesdale, he oversaw this process, and then the scoring itself was done as consensus scoring, which means they sat around after each interview and scored. Truesdale is the highest ranking member in that room. He's the direct supervisor of two of the individuals, and he's the highest ranking person in the building of the other person. To say that he didn't have some overarching ability to really control that discussion, I think would be somewhat disingenuous. Okay, so the true decision-maker in this- So this is the gender discrimination aspect of the argument, not the national. The national origin is based on these remarks about being stoic like an Indian? That's correct. Truesdale's remarks about being stoic like an Indian, when my client is Indian. Like an American Indian. Well, that was what his explanation was. That's correct, Your Honor. And I think the national origin case, one thing that- I think it is a thinner case, but I also think that one thing that the court did rule is that part of the reason that John Griffin was promoted for this position was the fact that he was African American. And as such, if that was truly what the FedEx's- one of their rationales was, choosing to hire a black male over an Indian woman, I think that is also proof of the gender discrimination and the national origin discrimination itself. I think another really important thing to note on this is the way that this was also handled by Truesdale at the very outset, whenever this position became available. My client was an operations manager, which is one level below senior manager on the AM shift. Mr. Griffith was on the- This is the switching from the AM to the AM shift. Exactly, Your Honor. Basically, this was an open AM position. He then took the PM manager, Rick Micklins, moved him to the AM position, moved Griffin over to the PM position without any interview, without posting the job, without any consultation with anyone. And I think under the direct method, between the testimony of these individuals, Truesdale's switching of this position, Truesdale's gendered stereotypes that he gave in the meeting with respect to calling my client aggressive, et cetera, when other people that were in similar meetings with her never saw any of the things that he saw, as well as the fact- Wasn't that Rodriguez who testifies to that? That's correct, Your Honor. One thing that George Truesdale pointed out in that meeting is during the discipline procedure that's done in-house at Federal Express, he saw my client being aggressive, and I think harsh may have been the word, with employees that worked underneath her. Mike Rodriguez was an HR director and was in the same meetings, and from what he saw, he had never saw the same things. I see my rebuttal time is up. Yes, you can save a bit for rebuttal. Thank you. Thank you. Ms. Green. Good morning. Ellen Green for Defendant Appley Federal Express Corporation. May it please the Court. There are a lot of facts in this case, but the important facts here are clear and undisputed. George Truesdale, who was the managing director and the ultimate decision maker, filled this position using a four-person interview panel, which included a member of the FedEx Human Resources Department. But isn't there a problem with this panel, since obviously his decision with respect to Phillips shows that it was an advisory panel, but it was not a panel that was giving binding advice, because he checks with the St. Louis manager. The person says Mr. Phillips doesn't yet have enough experience for something like Chicago. Truesdale accepts that input and overrides the interview panel. So once we focus on Mr. Truesdale as the decision maker, there are problems, such as remarks that the Supreme Court criticized in the Price Waterhouse case. There's his track record, there's the possibility of manipulating the scores with this consensus scoring. Why isn't this enough to create a jury issue? Well, Your Honor, it raises a lot of different issues. The first, with respect to the use of interview panel, is to provide an objective basis for assessing the candidates and to get other people's input. So it's only input, though, and I'm just saying, even if you think the panel, not him, the other members of the panel are giving advice, he's the decision maker. We need to focus on who's the decision maker. Correct, Your Honor. He's a decision maker who feels comfortable both manipulating the scores that the panel comes up with, which affects the ranking, and also overriding the panel's advice when he thinks he has a good reason to do it. Your Honor, even if Truesdale did, as you say, override the panel, it wasn't for a non-legitimate reason. After Michael Phillips scored the highest, he discussed Michael Phillips with his direct supervisor out of St. Louis, who advised him that he did not believe that Phillips was ready for a large station managerial position. That, in and of itself, doesn't worry me. It's the overall evidence that, if believed by a fact, could show that Truesdale is just not going to put a woman in this next rank of the supervisory positions. Well, the plaintiff in this case was not the next candidate in line. She was not the third candidate. Well, but that's where we have to get to the integrity of the rankings, and there's some evidence in the record to suggest that Truesdale himself is giving higher or lower scores that dictate the sequence. I don't believe that there's evidence in the record that whatever scores Truesdale gave manipulated the process. There's some discrepancies, maybe half a point, but they're not enough to make a mathematical difference in the ultimate ranking of plaintiff as fourth behind Phillips, behind John Griffith, who was the next person in line and was the next person offered the position, and followed by Robert Smith, and then followed by Hussein. This is with four people making very detailed assessment sheets. The candidates all gave presentations on the same topics. They answered the same questions. But where does Truesdale ever say, I'm going to go by these rankings? Doesn't he say the opposite? He says, I thought in his deposition, that he's also looking, in addition to the consensus scores, at subjective factors such as his observations, his assessment of fit, and that's something he does in his sole discretion. Yes, these are reasons that he ultimately chose John Griffith. His interview score was one of the factors, his desirability for the job, the fact that he had more managerial experience than plaintiff, the fact that he was a minority candidate, and FedEx had a diversity. How does that factor in? So is she. Well, it was just part of the bigger picture. I was a little surprised that FedEx wanted to rely on that, since she is also a minority candidate. This was just in the testimony of George Truesdale, I believe, and that it was part of the And he scored second above plaintiff, who was merely fourth. Truesdale's score for Hussein was lower than the score she received from the direct reports? Excuse me. Well, two of Truesdale's direct subordinates are on the panel, right? There are two operations, senior managers on the panel. Two senior managers. And a member of Human Resources. Right. So these two senior managers are on the panel. Both of the senior managers give her a higher score than Truesdale does. But he doesn't give her the lowest score of the candidates. He ranked her above maybe three or four other candidates. Right. No, I'm just saying, I'm trying to keep the summary judgment. And all the members of the panels offered affidavits that are in the record, testifying that they were not influenced by George Truesdale, that they made independent assessments of the candidates. At some point, and I can't find it right off here, FedEx changed their policy, who was on this committee? Yeah, after this, there was a complaint filed internally by the plaintiff. They did look at the procedures and thought it best to determine that you didn't have somebody in the same position, let's say a senior manager of somebody who's applying for the senior manager position. But that doesn't mean that the process that was in place before was inherently unfair or that they were influenced by the presence of George Truesdale on the panel as well. Plaintiff had the opportunity to depose these people. In fact, she didn't even depose Morris, who also sat on the panel, to get any testimony from him as to any influence by Truesdale. And there's no evidence in the record. It's just pure speculation that they were influenced by his presence and couldn't make objective determinations on their own. But then there seems to be a distinction, although not whether you're an operations manager, say, or a senior manager in a Chicago operation or a suburban operation. I mean, in the minds of the people? Well, in the people, it just depends on the person. When a plaintiff transferred to Chicago, I believe she wanted a position that was in the suburban location because it was less busy, but even though it was lower pay. Somebody may have wanted the Chicago position because it was a higher pay. For the same position, it was a pay differential. But she had wanted the lower paying, less busy position. At the time. So it's kind of apples and oranges as to what is a more desirable position. But I'm running out of time, but I just wanted to address the mosaic. There's really not enough for a reasonable jury to conclude that this promotion decision to hire John Griffith, who scored second in the interview panel, over Hussein, who scored fourth, was a result of any discriminatory attitudes based on gender or national origin. With national origin, the only evidence in the record is that single comment that Shusdale made in this post-interview meeting where he... Well, it wasn't only a single comment, he compounded it. Well, he called it, he said to be stoic. Well, I didn't mean Indian Indian, I meant American Indian. American Indian, in which in the complaint at paragraph 51, that's what she alleges in her complaint, that he made a comment about her that she should be more like an American Indian, which should be treated as an admission in itself. But even if he made that comment, it doesn't show that this hiring decision was a result of any animus based on her being of Indian origin. She was just the wrong kind of Indian. I... It was maybe a stupid comment, and he was... There was some reprimand. He was reprimanded for that, and there was... It was addressed, but even if... I don't think it could be understood to have meant that... Of her Indian origin, but if it did, it didn't show that this was the basis for the hiring decision to choose John Griffith. Over... Ms. Hussain. Well, I see I'm out of time, but I... Anything else? If you have no further questions, we'd ask you to affirm the district court's grant of summary judgment in favor of FedEx. Thank you. Thank you. Anything further, Mr. Bertinet? Judge, I think with respect to your comment, that FedEx changed their policy with respect to the senior manager position, I also think it's important to note that they also changed the hiring guidelines for interim senior managers as well, basically setting up a whole new protocol and a whole new basis for those hiring decisions so that they couldn't be done in the way that George Truesdale did in this matter. In addition, he also violated normal FedEx policy whenever he did not accept the panel's recommendation of the highest scoring candidate. This thing is littered with things where George Truesdale went outside of the scope of what was normal FedEx policy and procedure to make sure that his chosen candidate, it appears, was higher. This is not a summary judgment case. This is a case that should go to a jury. There are absolutely sufficient facts that would allow a jury to find that Ms. Hussain was discriminated against and not given this position due to her national origin, her gender, or both. With respect to the scoring, going back to that issue that was raised, one thing that's important to note is John Griffith was basically given the answer sheet to the test in a lot of ways whenever 40 percent of the scoring of the panel was based upon what he would do in the GYY PM position that he currently held 30, 60, and 90 days after he was hired for it. That's the equivalent of giving a kid an answer key to part of a test and then being surprised that they're number two on the list. With respect to also the scoring, the scoring is an absolute mess. The score sheets have numbers crossed out on them. They have some numbers that are averaged. There are some numbers that are consensus scoring. They are an absolute mess, and we talk about that in our brief as well. Again, I don't think this is a case that should have been dismissed on summary judgment, especially when the arguments and the facts that actually exist are taken in a light most favorable to my client. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.